**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:23-cv-02946

DIGITAL BROADCASTING SOLUTIONS,
LLC,
a Texas limited liability company,
                  Plaintiff,

        v.                                  **JURY TRIAL DEMANDED**

DISH NETWORK L.L.C.,
a Colorado limited liability company,


                  Defendant.

---

**DEFENDANT'S MOTION FOR A STAY PENDING
DECISIONS ON PETITIONS FOR *INTER PARTES* REVIEW**

---

## I.   MOTION TO STAY

    Defendant DISH Network L.L.C. ("DISH") respectfully moves the Court to stay this case pending decisions by the Patent Trial and Appeal Board ("PTAB") on DISH's petitions for *inter partes* review ("IPR") challenging the validity of all asserted claims of U.S. Patent Nos. 8,929,710 (the "'710 Patent") and 9,538,122 (the "'122 Patent") (collectively, the "Asserted Patents"). We are on the verge of receiving the PTAB's institution decisions regarding these IPR proceedings that may completely dispose of this case by finding all asserted claims invalid. Accordingly, DISH respectfully requests a 38-day stay until the PTAB issues its institution decisions. If the PTAB does institute proceedings, DISH will request a further stay at that time. Defendant attempted to confer with Plaintiff Digital Broadcasting Solutions LLC ("DBS") regarding the present motion but received no response; Defendant assumes DBS opposes this Motion.

## II.   INTRODUCTION

This District regularly grants pre-institution stays.   *See, e.g., Personalis, Inc. v. Foresight Diagnostics Inc.*, No. 22-cv-01913-CBS-NRN, 2023 WL 371931 (D. Colo. Jan. 24, 2023); *Smith Sport Optics, Inc. v. Burton Corp.*, 601 F.Supp.3d 936 (D. Colo. 2022); *Cellect LLC v. Samsung Electronics Co., Ltd. et al.*, No. 19-cv-00438-CMA-MEH, 2020 WL 3425166 (D. Colo. June 23, 2020).   As in *Cellect*, each factor that courts consider in staying a case strongly weighs in favor of a stay here.

*First*, staying this case for a mere 38 days will allow the PTAB to consider the validity of all asserted claims is not burdensome or unreasonable.   It will simplify—and potentially eliminate—issues of validity and infringement and resolve all or most of the case.   DISH's IPR petitions collectively challenge the validity of every claim asserted by DBS.   If the PTAB concludes that all claims are invalid, then this action becomes moot.   Even if the PTAB does not find all claims invalid, though, or determines not to institute trial on DISH's petitions, granting a stay will simplify issues for this Court.

*Second*, the stage of litigation is uniquely suited for a stay.   This case is in the early stages of discovery after transfer to this District.   The case was transferred this week, and a trial date has not been set in this District.   Thus, the parties can easily resume discovery on any non-instituted patents if necessary.   In the absence of a stay, however, the parties and the Court will expend time and expense on discovery and claim construction for patents that may be invalidated by the PTAB.

*Third*, a short stay would not prejudice DBS or present any significant tactical advantage to DISH.   DBS allowed a *de facto* stay of four months after the Eastern District of Texas granted DISH's motion to transfer. And DBS will suffer no harm from the minimal delay a stay would present. DISH moved diligently to file its petitions within eight months of being sued—well before the statutory one-year bar date for filing such petitions.   As a non-practicing entity, any delay resulting from the stay

2

would not unduly prejudice DBS and monetary damages would adequately compensate for any delay.

*Finally*, a de minimis stay now, rather than waiting until after the PTAB issues its institution decisions, will prevent any disruption in restarting the case after transfer and then stopping for a stay should the PTAB institute the IPRs. It would be inefficient to resume discovery and claim construction when much of that work may become unnecessary or will need to be revisited in view of the PTAB proceedings. In similar circumstances, this District has granted pre-institution stays for IPRs as requested by this motion to stay. *See Cellect*, 2020 WL 3425166, at *7 ("Staying proceedings will likely reduce the burden of litigation on the Court and the parties, which weighs in favor of granting Samsung's Motion to Stay."); *see also Sound View Innovations, LLC v. DISH Network, L.L.C.*, No. 1:19-cv-03707, Dkt. No. 120 (D. Colo. Nov. 13, 2020) (granting defendant's motion to stay pending IPR institution decisions); *Uniloc 2017 LLC v. Sling TV L.L.C.*, Case No. 1:19-cv-00278-RBJ, Dkt. 71 (D. Colo. Oct. 18, 2019) (same); *Safecast Ltd. v. DISH Network Corp. et al.*, No. 22-cv-03037-RMR-SKC, Dkt. 61 (D. Colo. Aug. 28, 2023) (same).

## III.   BACKGROUND

### A.   IPRs are designed to reduce litigation costs

Congress introduced IPR as an administrative adversarial proceeding to challenge patent validity in order to limit excessive and unnecessary litigation costs. *See* 35 U.S.C. §§ 311–319; *Cocona, Inc. v. VF Outdoor, LLC*, No. 1:16-cv-02703-CMA-MLC, ECF No. 71 at 3 (D. Colo. Mar. 19, 2018) (hereinafter, "*Cocona*"). The IPR process permits a patent infringement defendant to file, within one year of being served with a complaint, a petition challenging any claim of that patent. *See* 35 U.S.C. § 315(b). If instituted, the PTAB conducts a full review of the challenged claims and issues a final written decision setting forth its detailed analysis and conclusion within one year. *See* 35 U.S.C.

§§ 316(a)(c), 316(a)(11), 318(a); 37 C.F.R. § 42.100(c).

The legislative history related to IPRs reflects congressional approval of courts liberally granting stays pending the completion of these proceedings.  See *Cocona*, at 4 (citation omitted).  The IPR process, for example, is designed to further the AIA's goal of "establish[ing] a more efficient and streamlined patent system that will improve patent quality and limit unnecessary and counterproductive litigation costs."  *Id.* at 3 (citation omitted).  Staying related litigation pending IPRs "effectuates the intent of the AIA by allowing the agency with expertise to have the first crack at cancelling any claims that should not have issued in the patents-in-suit before costly litigation continues."  *Software Rights Archive, LLC v. Facebook, Inc.*, Nos. C-12-3970 RMW, C-12-3971 RMW, C-12-3973 RMW, 2013 WL 5225522, at *6 (N.D. Cal. Sept. 17, 2013).

### B.   Procedural history and transfer of venue

On August 29, 2022, DBS filed its complaint in the Eastern District of Texas alleging infringement of two patents: the '710 Patent and the '122 Patent (collectively, the "Asserted Patents"). *Digital Broadcasting Solutions, LLC v. DISH Network, L.L.C.*, No. 2:22-cv-00335-JRG, Dkt. 1 (E.D. Tex.).  On November 11, 2022, DISH moved to transfer this case to the District of Colorado under 28 U.S.C. § 1404(a).[1]  Dkt. 20.  Judge Gilstrap carried the motion and ordered the parties to conduct 75 days of limited venue discovery and provide supplemental briefing before ruling on the motion.  Dkt. 41, 15.  Supplemental briefing concluded on May 1, 2023, and on June 21, 2023, Judge Gilstrap granted DISH's motion to transfer to the District of Colorado.  Dkt. 48, 1.  Then, for more than *four*

---

[1] On November 8, 2023, DISH filed a Motion to Dismiss Indirect Infringement and Willfulness Allegations under Rule 12(b)(6).  *See* Case No. 2:22-cv-00335-JRG at Dkt. 18.  DBS filed a response (Dkt. 24), and DISH filed a reply to DBS's response (Dkt. 32).  Judge Gilstrap did not rule on this motion before the Motion to Transfer was granted.

*months*, DBS let this case languish by failing to take any action to complete the transfer to this District. *See* Ex. A (Nov. 6, 2023 Email from Dhanani to DBS counsel).

Pursuant to the Scheduling Order entered by the Eastern District, DBS served its infringement contentions on November 3, 2022, and DISH served its invalidity contentions on January 20, 2023. DISH filed IPR petitions on both Asserted Patents on May 26, 2023. *See* Ex. B (IPR2023-00976, Paper No. 2, U.S. Patent No. 8,929,710) and Ex. C (IPR2023-00977, Paper No. 1, U.S. Patent No. 9,538,122). The PTAB accorded a filing date of May 26, 2023 for both petitions on June 16, 2023. *See* Ex. D (IPR2023-00976, Paper No. 5, U.S. Patent No. 8,929,710) (according the filing date of May 26, 2023) and Ex. E (IPR2023-00977, Paper No. 5, U.S. Patent No. 9,538,122) (according the filing date of May 26, 2023). DISH expects that the PTAB will issue institution decisions on both of the petitions no later than December 2023, as shown in the table below.

| IPR | Patent (Challenged Claims) | Accorded Filing Date | Deadline for Institution Decision[2] |
|---|---|---|---|
| IPR2023-00976 | '710 Patent (1–19) | 06/18/2023 | 12/18/2023 |
| IPR2023-00977 | '122 Patent (1–20) | 06/18/2023 | 12/18/2023 |

## C.    DBS's Asserted Patents

Todd Fitzsimmons, a patent attorney, is the sole, named inventor of both Asserted Patents. The Asserted Patents "relate[] to the storage and play back of time-shifted data, and more particularly to a system and method for adding auxiliary data to data that has been time-shifted." Dkt. 1, Ex. 1 ('710 Patent) at 1:16–19. The Asserted Patents admit that it was already known in the art that "[d]igital video recorders ("DVRs"), like TIVO™, [were] commonly used to record data (e.g., video, audio, etc.),

---

[2] The USPTO must issue an institution decision within six months after the date the PTO accords a filing date to the petition. 35 U.S.C. §§ 313–14.

allowing it to be played back at a later time." *Id.* at 1:21–23.  The Asserted Patents refer to this concept as "time-shifting," which "allows the recorded data (in its original form) to be played back at a later time." *Id.* at 1:24–25.  Thus, "the user can re-watch the [recorded] program (or a portion thereof), or skip a portion of the program." *Id.* at 1:43–45.

Because of the then-existing ability to skip over portions of programs, the Asserted Patents purport to recognize the dilemma that time-shifting functions presented to content owners and content providers.  Namely, "it allows the user to skip commercials, or paid advertisements, which can decrease the value of the program to the content owner, the content provider and advertisers." *Id.* at 1:46–49.  The Asserted Patents contain a total of 39 claims with all independent claims including allegedly novel limitations to "providing" certain video during either a "first" or "second" time period in which the video program might be blocked during a first time period but allowed during a second.  This is word gymnastics for enabling or disabling video content or programing.  The patent specifications do not describe any unique or new process or method for performing these steps or elements.

**D.    AutoHop**

AutoHop is one of three of DISH's commercial skipping features used on DISH's modern DVR set-top boxes, referred to as the Hopper family of DVRs.  The Hopper is considered a whole-home DVR that allows a user to "hop" from room to room watching the same show.  The AutoHop feature allows a user to automatically skip commercials in prerecorded, prime-time content from the four US national broadcast channels.  AutoHop works for prerecorded content to adjust for varying lengths of commercials from market to market.  Thus, the beginning and end of each content segment in relation to closed captioning data of the show must be marked manually by a human operator in Cheyenne, Wyoming.  This information is then delivered overnight to the Hopper for subsequent processing of

the prerecorded content to establish what portions to skip.

When introduced in 2012, the AutoHop feature was immediately attacked by the four U.S. networks under copyright law claiming it was a modification of their copyright interests. ABC, CBS, NBC and FOX each joined in litigation or challenges to stop DISH from skipping commercials in their programming. DISH defeated the initial preliminary injunction by FOX but later settled the cases after the networks threatened to stop providing DISH with their content. As a result of these attacks and litigation, DISH agreed to limit the use of AutoHop to only prime time shows recorded nightly excluding live sports or news programing. In addition, DISH subscribers could not use AutoHop on any particular show until 1 to 8 days after the initial recording depending on the network.

### E.    Technical background of the IPRs

Both of DISH's IPRs include invalidity grounds using ***DISH's own published prior*** art for the accused AutoHop feature—U.S. Patent No. 8,510,771 to Casagrande et al. ("Casagrande")—as the primary reference. Development of the AutoHop feature started in the mid-2000's and culminated with the first of several applications in November 2007. These applications all predate the DBS asserted patents. For example, Casagrande disclosed the AutoHop feature and was filed on May 4, 2009, more than a year before the November 1, 2010 earliest priority date of either asserted patent. Thus, Casagrande qualifies as prior art under at least 35 U.S.C. § 102(e). Separately, and not cognizable within IPR scope or jurisdiction, the AutoHop feature was invented and used by DISH engineers several years before the priority date for the Asserted Patents.

DBS appears to assert that DISH later learned that it would need to delay access to particular broadcast content after DISH was challenged by the four U.S. networks in May 2012. The claims of the Asserted Patents appear to focus on the idea of delaying the use or access to the AutoHop feature—

not the invention of the feature itself.  This concept of delaying the use of a known invention is abstract as well as obvious.  For example, one of the secondary references relied on in DISH's IPR petitions—U.S. Patent App. Pub. No. 2006/0225105 by Russ—was filed on April 5, 2005, and published on October 5, 2006, many years before the Asserted Patents.  Russ expressly discloses restricting the ability to skip or fast-forward through commercials for a specified period of time after a show is recorded.

## IV.   LEGAL STANDARDS

District Courts have the power to control their dockets, which includes the ability to exercise broad discretion on whether to stay proceedings.  *See Clinton v. Jones*, 520 U.S. 681, 706 (1997).  There is a "liberal policy in favor of granting motions to stay proceedings pending the outcome of" IPR proceedings, which were designed to be "a timely, cost-effective alternative to litigation." *Wonderland Nursery Goods Co. v. Baby Trend, Inc.*, No. EDCV 14-01153-VAP, 2015 WL 1809309, at *1, *3 (C.D. Cal. Apr. 20, 2015) (citation omitted).  To determine whether to stay a case pending parallel PTO proceedings, courts consider several factors and the totality of the circumstances.  *See Kamstrup A/S v. Axioma Metering UAB*, No. 19-cv-WJM-SKC, 2019 WL 6296699, at *1–2 (D. Colo. Nov. 25, 2019).  These factors include: "(1) whether a stay will simplify the issues in question and streamline the trial; (2) whether discovery is complete and whether a trial date has been set; (3) whether a stay would unduly prejudice the nonmoving party or present a clear tactical advantage for the moving party; and (4) whether a stay will reduce the burden of litigation on the parties and on the court."  *Id.* at *1–2 (quoting *eSoft, Inc. v. Blue Coat Sys., Inc.*, 505 F. Supp. 2d 784, 787 (D. Colo. 2007)).

"A stay is particularly justified where the outcome of a PTO proceeding is likely to assist the court in determining patent validity or eliminate the need to try infringement issues."  *Evolutionary*

*Intelligence, LLC v. Millennial Media, Inc.*, No. 5:13-cv-04206-EJD, 2014 WL 2738501, at *2 (N.D. Cal. June 11, 2014). This Court has acknowledged that the PTAB is more likely to come to correct decisions regarding patent claim validity and "faster than would be achieved via litigation in district court." *Cellect*, 2020 WL 3425166, at *3; *see also* Patent Reform Act of 2011, S23, 157 Cong. Rec. S1352 (daily ed. Mar. 8, 2011) (Sen. Udall commenting that "a panel of experts is more likely to reach the correct decision on a technical question compared to a jury composed of laypeople."). Courts in this District often stay cases pending IPR pre-institution. *See, e.g., Cellect*, 2020 WL 3425166, at *7 (granting pre-institution stay, thereby allowing PTAB to consider defendant's petition).

## V.    ARGUMENT

Staying this case until institution is the most efficient course of action for the Court and the parties.[3] As noted in this Court's decision in *Cellect*, "the scales tip heavily" in DISH's favor based on all four factors that courts consider in determining whether to grant a stay. *Id.* at *3, *7.

### A.    A stay will simplify and streamline the issues for trial.

The first factor—whether a stay will simplify the issues and streamline the trial—weighs heavily in favor of a stay. DISH's IPRs challenge ***all 39 claims*** of the Asserted Patents and stand to resolve the entirety of this case. The IPRs have the potential to be case-dispositive and a stay will simplify claim construction and avoid inconsistent results between this Court and the PTAB. Staying this case will also simplify the Court's invalidity analysis and reduce the complexity of discovery.

#### i.    The IPR proceedings will eliminate issues for trial.

DISH's petitions may ultimately dispose of the entire case. DBS's only cause of action is patent infringement and DISH has challenged the validity of every asserted claim based on its own patents

---

[3] If the PTAB does institute the IPR petitions, DISH will request a further stay at that time.

on the accused feature.  Accordingly, this suit may be dismissed if the PTAB finds all asserted claims invalid.  *See Fresenius USA, Inc. v. Baxter Int'l Inc.*, 721 F.3d 1330, 1340 (Fed. Cir. 2013) ("[W]hen a claim is cancelled, the patentee loses any cause of action based on that claim, and any pending litigation in which the claims are asserted becomes moot.").  Here, where DISH is asserting its own patents on the accused product, the likelihood is especially high that the IPR will result in either cancellation of the claims or significant non-infringement positions created *during the IPR process*.  For example, if DBS seeks to preserve the validity of the Asserted Patents, it will be forced to argue that its claims are not covered by DISH's asserted prior art and, therefore, do not capture the AutoHop feature either, meaning DISH cannot infringe.  Even if DBS asserts the "delay" in allowing the use of AutoHop as the novel feature, it still must defeat the combination of other prior art that clearly discloses this delay.  Lastly, if the Asserted Patents survive the IPR challenge, the specific novel claim language will be identified.  Once identified, this Court may analyze this limitation under 35 U.S.C. § 101 to determine if it contains anything more than the abstract concept of delay or inactivity—a result outside of scope of IPR review.  Thus, the IPRs will either result in invalidity of all claims or a significantly narrowed case on non-infringement.

Bluntly, the issues will be simplified regardless of the outcome.  Even if the PTAB finds only some of the asserted claims invalid, the Court will not need to try issues of validity or infringement with respect to the invalidated claims.  *See Cellect*, 2020 WL 3425166, at *5.

The requested stay presents the "maximum potential for simplification of issues" because all asserted claims are challenged in DISH's IPRs.  *See RetailMeNot, Inc. v. Honey Sci. LLC*, No. CV 18-937-CFC-MPT, 2020 WL 373341, at *3 n.37 (D. Del. Jan. 23, 2020) (citing *Uniloc USA Inc. v. LG Elecs. U.S.A., Inc.*, No. 18-CV-06737-JST, 2019 WL 1905161, at *4 (N.D. Cal. Apr. 29, 2019)).  Thus,

staying the case for 38 days until the PTAB reaches its institution decisions in December 2023 will conserve resources by eliminating and streamlining issues in this case that will otherwise be addressed in the next month, including claim construction and discovery.

> **ii.     The IPR proceedings will simplify claim construction and reduce the risk of inconsistent results.**

Even if the PTAB does not institute, the IPR proceedings may simplify issues for claim construction for two reasons.  First, the IPRs will impact the Court's claim construction of disputed claim terms.  Second, the PTAB may construe terms in its institution decisions.

A stay would be beneficial because the IPR intrinsic record will inform the Court's claim construction.  It is well established that "statements made by a patent owner during an IPR proceeding, ***whether before or after an institution decision***, can be considered for claim construction and relied upon to support a finding of prosecution disclaimer."  *Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353, 1362 (Fed. Cir. 2017) (emphasis added).  DBS's statements in its preliminary responses to the IPRs—filed on September 18, 2023—have put the public on notice of how the patent owner views its patents and the prior art and will bind DBS in this action.  *See id.* at 1360.  For instance, pre-institution IPR proceedings may inform the parties' decisions on claim terms to propose for construction in this action and, even if institution is denied, the PTAB's analysis is likely to influence the parties' proposed constructions.  And, if institution occurs, it would be inefficient to hold a *Markman* hearing and prepare a claim construction order before the PTAB issues its construction on the asserted claims.  *Cellect*, 2020 WL 3425166, at *4 (considering the "PTO's expertise in determining claim validity and the assistance such determination will assist the Court in its own analysis" to determine that a stay will result in a simpler and more streamlined trial).  The parties' arguments and the institution decisions will add to the intrinsic record, so proceeding with claim construction rather than staying this case until

receiving an institution decision while the intrinsic record is developing would be inefficient. *Aylus*, 856 F.3d at 1359–60.

A stay will also prevent duplicative efforts by this Court. Importantly, the PTAB now applies the same claim construction standard in IPR proceedings as this Court. 37 C.F.R. § 42.100(b); *CUPP Computing AS v. Trend Micro Inc.*, 53 F.4th 1376, 1380 (Fed. Cir. 2022) ("In IPR proceedings the Board now applies the *Phillips* claim construction standard governing federal courts."). If the PTAB construes terms of the asserted claims for purposes of the institution decision, those constructions and the Board's reasoning may simplify the claim-construction analysis for this Court. Proceeding with claim construction in parallel with the IPR proceedings also poses the risk of inconsistent results and increases the likelihood that the Court may have to revisit certain issues. *See Wonderland*, 2015 WL 1809309, at *5 ("[T]he record created during any IPR proceedings may affect the claim construction analysis and may require new briefing."). Staying the case for the benefit of a more developed intrinsic record and the PTAB's claim constructions will simplify claim construction and avoid potentially unnecessary work for the Court and both parties.

### iii.    A stay will simplify issues for discovery.

Granting a stay at this stage will reduce the discovery burden. Even if the PTAB does not find all the challenged claims invalid, granting a stay now would eliminate the need for post-IPR fact and expert discovery regarding the four prior art references subject to the IPRs. Because the case is in the early stages of discovery, the savings resulting from such simplification would be substantial. If the case is stayed, when discovery resumes, the parties will be able to limit remaining written discovery requests to just those issues remaining in the case after the IPRs conclude. Similarly, depositions can be limited to a smaller pool of witnesses, potentially eliminating the need to depose individuals whose

testimony relates only to invalidated claims.  Expert discovery would be similarly streamlined, as only issues remaining in the case would need to be addressed.

For the foregoing reasons, a stay will simplify issues and streamline trial in this case.

**B.     The stage of litigation weighs heavily in favor of staying the case.**

The second factor—whether discovery is complete and whether a trial date has been set—weighs in favor of a stay, as the stage of this case is uniquely suited for a stay.  This case was just transferred from the Eastern District of Texas and no schedule has been set.  *See* Dkt. 48, 1.  Due to the extended briefing schedule for the motion to transfer and the focus on venue-oriented discovery, this case is still in the very early stages of merits discovery despite the time it has been pending.  While both sides have served interrogatories and produced a limited number of documents, neither side has taken depositions of any fact or expert witness on non-venue issues.  Accordingly, most discovery, pretrial preparation, and a trial date are well in the future.  In the unlikely event that both petitions are denied, the parties could resume the litigation with minimal schedule interruption.  Moreover, although the parties had begun the claim construction exchange process prior to the transfer, no briefs have been prepared or filed; the parties have simply identified potential terms for construction and proposed constructions.

Where, as here, there has been little material progress in a litigation, courts in this District and elsewhere have found that the second factor weighs in favor of a stay.  In *Cellect*, Judge Arguello found that this factor weighed in favor of a pre-institution stay in a case even further along than this one.  The Court found that "[l]ittle else of substance" had happened other than the exchange of requests for production and interrogatories, the filing of a joint disputed claim terms, and the filing of an opening claim construction brief.  *Cellect*, 2020 WL 3425166, at *5.  Similarly, in *Wonderland*, the California

court found this factor weighed in favor of a pre-institution stay, because "fact discovery is not yet complete, expert discovery has not yet begun, . . . a trial date has not yet been set[,]" a "*Markman* hearing has not yet taken place and no disputed claim terms have been construed[.]" *Wonderland*, 2015 WL 1809309, at *3; *see also Safecast*, Dkt. 61 at 11 (finding this factor weighed in favor of a stay where no trial date set and "the parties are still in early discovery.").

Without a stay however, this case will proceed with the parties expending resources on discovery and claim construction. Claim construction could progress before the PTAB renders its institution decisions. The parties will also be forced to proceed with other discovery, including potentially depositions, interrogatories, and requests for production, and the Court may be required to decide any discovery disputes that arise from these exchanges. Waiting until the PTAB eliminates or simplifies these issues would conserve significant time and expense in this case. Thus, this factor weighs in favor of a stay.

### C.    Staying the case would not unduly prejudice DBS and does not present a clear tactical advantage for DISH.

A stay will not unfairly advantage or disadvantage either party. As discussed below, DISH's diligent and timely IPR filings do not present a significant tactical advantage for DISH. And as a non-practicing entity that does not compete directly with DISH, a stay does not present any threat of prejudice to DBS.

DISH has acted diligently and does not gain any tactical advantage from a stay. To determine tactical advantage, Courts consider the reasonableness of the timing of DISH's IPR-related filings with respect to litigation schedule. *See Cellect*, 2020 WL 3425166, at *6. Here, DISH acted diligently by filing its IPR petitions eight months after DBS commenced this action, well before the one-year bar date. 35 U.S.C. § 315(b); *Cellect*, 2020 WL 3425166, at *6 (finding Samsung's motion to stay pending

institution did not provide a tactical advantage when Samsung filed IPRs one-day before the one-year statutory deadline).  DISH filed this motion to stay within a few days of this case being transferred to this District, and no schedule or trial date has been set.  There is no tactical advantage here.  Rather, DISH exercised its statutory right to request expert review of the asserted patents for the same reason contemplated by Congress in enacting IPR—as a cost-effective and efficient alternative to district court litigation.

Second, DBS cannot show any prejudice that would result from a stay, especially the de minimis stay until the IPR institution decisions.  Courts have found that delay alone is insufficient to establish prejudice.  *See Cellect*, 2020 WL 3425166, at *6 (citing *Photoflex Products, Inc. v. Circa 3 LLC*, No. C 04-03715 JSW, 2006 WL 1440363, at *2 (N.D. Cal. May 24, 2006) ("The delay inherent to the reexamination process does not constitute, by itself, undue prejudice.")).  Moreover, any delay in this case is negligible because it was just transferred from the Eastern District of Texas and no schedule or trial date has been set.  And any claims of prejudice to DBS would be disingenuous (at best). DBS did not take *any* action to move this case forward or complete the transfer to this District from the time the transfer motion was granted in June until DISH contacted DBS on November 6, 2023.  Ex. A. As DBS was evidently not prejudiced by that four-month delay, it can hardly be said that DBS would be prejudiced by a one-month stay.  Finally, "IPR[s] provide[] a more efficient and timely resolution to disputes of patent validity than can be achieved by litigation." *Id*.  Thus, there is no viable threat of prejudice from a stay.

Indeed, DBS is a non-practicing entity formed barely two months before it brought this case against DISH.  *See* Dkt. 20-4 (listing DBS's organization original data of filing as June 27, 2022). DBS does not make or sell any products and it does not compete against DISH (directly or indirectly).

*See* Ex. F, Fitzsimmons Dep. Tr. at 120:21 to 121:5; *see also Cellect,* 2020 WL 3425166, at *6 (finding

this factor weighs in favor of a stay in part because the parties do not directly compete).  As such, DBS

does not stand to lose sales or market share due to a stay.  Although DISH denies that DBS is entitled

to any relief, any harm to DBS that results from a stay could be adequately compensated with monetary

damages.  *See, e.g.*, *Software Rights Archive, LLC* 2013 WL 5225522, at *6 (granting a stay,

recognizing that where plaintiff and defendant "are not competitors" and plaintiff "does not market

any products or services covered by the claims of the patents-in-suit," plaintiff can be "fully restored"

with monetary relief).  Accordingly, DBS would not be unduly prejudiced by a stay and this factor

weighs in favor of granting DISH's motion.

### D.      Staying the case will reduce the burden on the parties and on the Court.

The final factor—whether a stay will reduce the litigation burden—also weighs heavily in favor

of a stay.  A stay at this early stage will significantly reduce the burden on the Court.  Because issue

simplification frequently results in a reduced burden, courts "often collapse the first and fourth factors"

into one analysis.  *Fusion Specialties, Inc. v. China Network Leader, Inc.*, No. 12-cv-00009-CMA-

KMT, 2012 WL 3289077, at *2 (D. Colo. Aug. 11, 2012).  Here, a stay will reduce court congestion

and could result in the elimination of DBS's claims altogether for the reasons discussed above.

Additionally, a stay at this stage may simplify the Court's claim construction order regardless of the

IPRs' outcome.  The Court will benefit from the IPR intrinsic records, as well as the PTAB's expertise.

Regardless of the IPRs' outcome, a stay will reduce the burden on this Court.

A stay will also reduce the burden on the parties by avoiding "simultaneous[] litigating in two

forums with the risk of inconsistent or duplicative outcomes." *Safecast*, Dkt. 61 at 13.  If the case is

not stayed, discovery will resume and claim construction briefing and *Markman* hearing preparation

will commence.  These tasks are onerous and expensive.  For instance, preparing for claim construction will require research and preparation for opening briefing, a response, and reply briefing as well as preparation for a *Markman* hearing.  These are not trivial tasks and, if DISH prevails in the IPR proceedings, these efforts will have been entirely unnecessary.

Additionally, granting a stay will reduce the burden on the parties resulting from discovery—a burden that falls disproportionately on DISH.  Given the subject matter of the asserted claims and the functionalities of the accused product, such an approach would likely result in a substantial waste of the parties' time and resources exploring issues that may ultimately be mooted by the IPRs.  The more prudent approach is to stay this case pending the PTAB's institution decisions and, in doing so, focus the issues before moving forward with discovery.  Considering the potential cost savings and reduced burden to the parties and the Court, this factor heavily favors a stay.

**E.     A stay of this action would not be premature.**

DBS may argue that a stay is premature because the PTAB may not institute the petitions.  As explained above, however, DISH has challenged all asserted claims, thus presenting the opportunity for complete simplification of the issues by mooting the entire case.  Even if the PTAB declines to institute trial on DISH's petitions, the IPR record may inform the Court's claim construction analysis.  Accordingly, issue simplification may occur even if the PTAB does not institute.  Moreover, in the unlikely event that the IPRs are not instituted, the stay will be relatively short (only 38 days), and the action can continue with minimal delay.

The more likely outcome is that one or both petitions will be instituted.  If the Court denies this motion, it will likely face another motion to stay, at which point the parties will have expended significant resources on claim construction, discovery, and DISH's other potential motions in the

months between this stay motion and the institution decisions.   There is also the risk that IPR developments will necessitate reconsideration of certain issues, such as the Court's claim construction order.   As such, "the risk of delay attending an unnecessary stay is minimal relative to the risk of unnecessary expenditure of resources should the stay be denied and an IPR subsequently commence." *See Wonderland*, 2015 WL 1809309, at \*3.

## VI.   CONCLUSION

Accordingly, DISH respectfully requests that the Court grant its motion to stay this case.

Dated:  November 10, 2023

Respectfully submitted,

*/s/ G. Hopkins Guy, III*
Ali Dhanani
Email:  ali.dhanani@bakerbotts.com
BAKER BOTTS L.L.P.
One Shell Plaza
910 Louisiana Street
Houston, Texas 77002
Tel.:  (713) 229-1234
Fax:  (713) 229-1522

George Hopkins Guy, III
BAKER BOTTS L.L.P.
1001 Page Mill Road, Suite 200
Palo Alto, CA 94304-1007
Email:  hop.guy@bakerbotts.com
Tel.:  (650) 739-7500
Fax:  (650) 739-7699

Kurt Pankratz
Email: kurt.pankratz@bakerbotts.com
BAKER BOTTS L.L.P.
2001 Ross Avenue
Suite 900
Dallas, TX 75201-2980
Tel:  (214) 953-6584
Fax:  (214) 661-4584

*Attorneys for Defendant DISH Network L.L.C.*

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of the foregoing document via the Court's CM/EMF system on the 10th of November 2023.  Any other counsel of record will be served via First Class Mail.

*/s/ G. Hopkins Guy, III*
G. Hopkins Guy, III

## <u>CERTIFICATE OF COMPLIANCE</u>

This is to certify that in accordance with D. Colo. L. Civ. R. 7.1(a), Defendant requested to meet and confer with Plaintiff regarding this Motion. Defendant sent Plaintiff an email setting forth availability for a meet and confer on November 8, and followed up again by email on November 9, 2023. Plaintiff did not respond or provide any availability to confer.  Thus, Defendant assumes that Plaintiff is opposed to this motion.

*/s/ G. Hopkins Guy, III*
G. Hopkins Guy, III