## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:23-cv-02946-CNS-SBP

DIGITAL BROADCASTING SOLUTIONS, LLC,

      Plaintiff,

v.

DISH NETWORK L.L.C.,

      Defendant.

---

## ORDER AND RECOMMENDATION ON MOTION TO STAY

---

**Susan Prose, United States Magistrate Judge**

      This is a patent infringement case that Plaintiff Digital Broadcasting Solutions, LLC ("DBS" or "Plaintiff") has brought against Defendant Dish Network L.L.C. ("Dish"). Dish moves to stay the case pending inter partes review proceedings (the "IPR Proceedings") that Dish has brought before the Patent Trial and Appeal Board ("PTAB") of the United States Patent and Trademark Office ("PTO"). ECF No. 75 (the "Motion"). The court considers the Motion pursuant to 28 U.S.C. § 636(b)(1)(A) and the orders of referral. ECF Nos. 73 (Order Referring Case), 77 (Memorandum Referring the Motion). In a status conference of April 30, 2024, the court indicated that it intended to grant the Motion by a written ruling to follow. ECF No. 81. Neither party requested a hearing on the Motion, and the court finds a hearing unnecessary.

      As follows, the court now **GRANTS** the Motion. However, instead of staying the case, the court **RECOMMENDS** administrative closure until the IPR Proceeding and any appeal thereof are complete. This court further **RECOMMENDS** that Dish's unreferred, partial motion

(ECF No. 18) to dismiss be denied without prejudice to refiling after the case is reopened.[1]

I.     *Background and Procedural History*

A.     *The Asserted Patents and Alleged Infringement*

DBS filed this action in the Eastern District of Texas on August 29, 2022. ECF No. 1 (Complaint). The Complaint runs 32 pages, exclusive of exhibits. This court does not purport to exhaustively summarize the allegations or claims. But the court takes the following fact allegations from the Complaint as pertinent background.

DBS was founded by Todd Fitzsimmons, the sole inventor of the two Asserted Patents. In 1982, Mr. Fitzsimmons's father, George Fitzsimmons, founded Pacific Satellite Systems, a business that installed and programmed home satellite systems. Mr. Fitzsimmons worked for Pacific Satellite Systems through junior high and high school, sparking his interest in satellite television and its related equipment. Mr. Fitzsimmons received a B.S. in Electrical Engineering from the University of Washington in 1994. He continued his education by earning a J.D. from Loyola Law School (Los Angeles) in 2000. Being an inventor of his own patents, Mr. Fitzsimmons has for the past two decades counseled and represented clients in the acquisition, management, enforcement, and protection of intellectual property rights.

The patents-in-suit, U.S. Patent Nos. 8,929,710 (the "'710 patent," ECF No. 1-1) and 9,538,122 (the "'122 patent," ECF No. 1-2) (collectively, the "Asserted Patents"), are generally directed to innovations in time shifting video programs that relate to a system and method

---

[1] The partial motion to dismiss is not referred and for the court's purposes, is also not marked as pending in ECF. ECF No. 18. Dish argues therein that DBS's claims for indirect and willful infringement should be dismissed. DBS opposes (ECF No. 24), and Dish replied. ECF No. 32. The parties note that the motion was not resolved before the case was transferred to this District.

2

allowing a digital video recorder ("DVR") to skip commercials, especially when the commercials are no longer relevant given the passage of time, without altering the content of the original program.

By not allowing a user to skip commercials (or the like) during the first period of time and allowing the user to either watch or not watch commercials (or the like) during the second period of time, the claimed DVR strikes a balance between the interests of the advertiser and the user. It also solves a decade-old problem inherent with broadcast television. "The problem originates from the fact that this type of information (e.g., advertisements, news tickers, 'crawlers,' etc.) is selected based on when the program is being viewed. For example, if a program is being broadcasted on a Monday afternoon, then it may include commercials directed toward mothers, or individuals who are home on Monday afternoon. Similarly, if a program is being broadcasted on a sports channel on Sunday night, then it may include a news ticker on scores for sporting events that took place earlier that day." *Id*. at col. 1, l. 52 – col. 2, l. 4. 39. The Asserted Patents solve this problem by implementing a state-machine that prevents skipping during a first period of time, and allows skipping (or not, depending on the user's desire) during a second period of time.

For example, Claim 1 of the '710 patent provides for a DVR that is configured to (1) receive a video program that includes first, second, and third portions, where the second portion (e.g., a commercial) follows the first portion, and the third portion follows the second portion, (2) play the video program in its entirety if a second command (e.g., a play command) is received during a first period of time, (3) play the video program in its entirety if the second command (e.g., the play command) is received during a second period of time and the DVR is in

a first playback state (e.g., a non-commercial-skipping state), and (4) play only a portion of the video program if the second command (e.g., the play command) is received during the second period of time and the DVR is in a second playback state (e.g., a commercial-skipping state), wherein (a) the "portion" includes the first and third portions of the video program and (b) the third portion is played immediately following the first portion of the video program. *See* Complaint at 6-13 (several allegations omitted).

In preferred embodiments, the Asserted Patents are directed to DVR technology, and more specifically to a DVR that is configured to skip a portion of a video program (e.g., commercials) only after a period of time has expired and only when the DVR has been placed in a second playback state (e.g., a commercial skipping state).

The Asserted Patents have several advantages or benefits over conventional DVR technology. A first benefit is to the user; by allowing the user to switch the DVR between first and second states, the user can choose to either watch the program in its entirety as broadcasted (e.g., including commercials) or watch only a portion of the program (e.g., skipping the commercials).

A second benefit is to the advertiser; playing the program in its entirety during the first period of time, regardless of the playback state of the DVR, ensures playback of a commercial during the advertiser's contracted period of time and when the commercial is most relevant. "For example, a program may include an advertisement for a movie that is currently being shown at a local theater. If, however, the user does not watch the program for several weeks, the movie may no longer be playing at the local theater." '710 Patent, col. 1, ll. 50-61. In this example, the advertisement for the movie "is removed only after its value has diminished." *Id*. at Abstract.

A third benefit is to the broadcaster; by transmitting the program in its entirety and using the DVR to automatically skip over portions of the program, copyright issues can be avoided. This is in contrast to DVRs (or receivers) that can download commercial-free programming, which generally requires the broadcaster to receive permission from the content owner to alter the programming or face potential copyright violations. It also generally requires both the broadcaster and the user to pay for the commercial-free programming. The technology claimed in the Asserted Patents does not require either, as the programming (or portions thereof) is not altered, but merely skipped.

DBS alleges that Dish infringes the Asserted Patents by making, using, selling, offering to sell, and/or importing its DVRs that utilize technology to skip downloaded programming, including commercials. Exemplary accused infringing DVR devices include, but are not limited to, the DISH Hopper, DISH Hopper 2, DISH Hopper 3, Hopper with Sling, and Hopper Duo (collectively, the "Accused Products"). Complaint ¶ 45.

Based on these fact allegations (and others omitted here), DBS brings Count I for infringement of the '710 Patent and Count II for infringement of the '122 Patent. In each claim, DBS includes theories of direct infringement, inducement of infringement by users of the Accused Products, and willful infringement. DBS seeks damages, treble damages for willful infringement under 35 U.S.C. § 284, pre- and post-judgment interest, and for the court to declare this an exceptional case and award reasonable attorney's fees and costs pursuant to 35 U.S.C. § 285. Complaint at 31-32. DBS does not request injunctive relief in the Complaint.

B.    *Dish's Motion to Transfer Venue*

In November 2022, Dish filed an opposed motion to transfer venue to this District. ECF

No. 20. Judge Rodney Gilstrap granted that motion on June 21, 2023, in a restricted order. ECF No. 48. There was apparently some delay before the transfer was initiated, and in the end, this District received the case on November 7, 2023. ECF No. 52.

C.    *The Status of Discovery and the Schedule*

Shortly after the case arrived in this District, on November 10, 2023, Dish filed its first motion to stay based on its then-pending petitions to institute IPR. ECF No. 68. Judge Sweeney referred that motion to this court. ECF No. 73. On December 15, 2023, Dish filed a notice that its first motion to stay was moot because the PTAB instituted the IPR Proceeding. ECF No. 74.

On December 20, 2023, Dish filed its present Motion to stay pending the IPR Proceeding and any appeal thereof. ECF No. 75. DBS opposed the Motion on January 10, 2024. ECF No. 78 ("Resp."). On January 24, 2024, Dish replied. ECF No. 79.

Before the transfer, Judge Gilstrap had set a jury selection date of April 1, 2024, and a *Markman* hearing for September 28, 2023. ECF No. 28. Those dates of course were vacated when the case was transferred, and this court has not yet set a schedule. Therefore, the court has not yet scheduled discovery, expert disclosures, a *Markman* hearing, or trial.

As for discovery completed before the case transfer, it appears that Judge Gilstrap entered an agreed-upon order of discovery plan. ECF No. 29. The parties were to provide several disclosures under that order, and the order set quantitative limits on discovery. *Id*. Dish filed a certificate of compliance with the disclosure obligations. ECF No. 31. The discovery order does not appear to limit discovery to venue issues, but Dish asserts that "only very narrow discovery has taken place, and the parties have not engaged in any discovery since June 2023." Motion at 3. Dish points to an order of Judge Gilstrap that ordered "75 days of limited venue discovery."

Motion at 3 (citing ECF No. 41 at 15). DBS appears to agree that the only discovery conducted to date is venue discovery. Resp. at 1, 2, 7.

The parties did proceed in the Eastern District of Texas with their respective contentions. DBS issued its infringement contentions; Dish issued its invalidity contentions; and the parties exchanged terms for claim construction and their proposed claim constructions. Resp. at 7.

  D.  *The IPR Proceedings*

On May 26, 2023, Dish petitioned for IPR of the '710 patent and '122 patent. ECF No. 75-2, 75-3 (the "IPR Petitions").[2] Dish sought IPR for the PTAB to review whether DBS' Asserted Patents are invalid due to obviousness and anticipation in certain prior art, namely U.S. Patent No. 8,510,771 to Casagrande et al., entitled "Methods and apparatus for filtering content from a presentation stream using signature data" ("Casagrande"); U.S. Patent No. 7,251,413 to Dow et al., entitled "System and method for improved blackfield detection" ("Dow"); and U.S. Patent App. Pub. No. 2006/0225105 by Russ, entitled "Networked multi-room system ad insertion" ("Russ"). ECF Nos. 75-2 and 75-3 at 6. As to the '122 patent, Dish also argued obviousness based on U.S. Patent App. Pub. No. 2009/0165057 by Miller et al., entitled "Concurrent program content processing apparatus, systems, and methods" ("Miller"). ECF No. 75-3 at 6.

On December 11, 2023, the PTAB instituted the IPR Proceedings as to all claims of the Asserted Patents. ECF No. 75-4 (instituting IPR on '710 patent); No. 75-5 (instituting IPR on '122 patent). The PTAB found Dish "established a reasonable likelihood of prevailing with respect to the unpatentability of at least one claim of the '710 patent," and of the '122 patent. *Id.*

---

[2] It is undisputed that Dish timely filed the IPR Petitions under 35 U.S.C. § 315(b).

at 3. Under statutory time limits, "DISH expects that the PTAB will issue final written decisions in both IPRs no later than December 2024," specifically, by December 11, 2024. Motion at 7, n.6 (citing 35 U.S.C. § 316(a)(11)).

## II.     Legal Standards

### A.     The Legal Background for the IPR Process

The Supreme Court has helpfully described the background for IPR proceedings:

> After a patent issues, there are several avenues by which its validity can be revisited. The first is through a defense in an infringement action. Generally, one who intrudes upon a patent without authorization "infringes the patent" and becomes subject to civil suit in the federal district courts, where the patent owner may demand a jury trial and seek monetary damages and injunctive relief.

*Return Mail, Inc. v. United States Postal Serv.*, 587 U.S. ---, 139 S. Ct. 1853, 1859, 204 L. Ed. 2d 179 (2019) (citing 35 U.S.C. §§ 271(a), 281–284). "Once sued, an accused infringer can attempt to prove by clear and convincing evidence "that the patent never should have issued in the first place." *Id.* (quoting *Microsoft Corp. v. i4i L.P.*, 564 U.S. 91, 96–97 (2011); citing 35 U.S.C. § 282(b)).

Another avenue for challenging validity is to petition "[t]he Patent Office [to] . . . reconsider the validity of issued patents." *Return Mail*, 139 S. Ct. at 1859.

> In 2011, Congress overhauled the patent system by enacting the America Invents Act (AIA), which created the Patent Trial and Appeal Board and phased out [a prior procedure for review of patents,] inter partes reexamination. See 35 U.S.C. § 6; H. R. Rep. No. 112–98, pt. 1, pp. 46–47. In its stead, the AIA tasked the Board with overseeing three new types of post-issuance review proceedings.
>
>     First, the "inter partes review" [(IPR)] provision permits "a person" other than the patent owner to petition for the review and cancellation of a patent on the grounds that the invention lacks novelty or nonobviousness in light of "patents or printed publications" existing at the time of the patent application. § 311.

8

*Return Mail*, 139 S. Ct. at 1860. *See also Thryv, Inc. v. Click-To-Call Techs., LP*, 590 U.S. 45,

48 (2020) (citing *Cuozzo Speed Techs., LLC v. Lee*, 579 U.S. 261, 267 (2016)).

Under the statutory provisions authorizing the IPR proceeding:

> [A] person who is not the owner of a patent may file with the Office a petition to institute an inter partes review of the patent. A petitioner . . . may request to cancel as unpatentable 1 or more claims of a patent only on a ground that could be raised under section 102 or 103 and only on the basis of prior art consisting of patents or printed publications.

35 U.S.C. § 311(a), (b) (in relevant part, paragraph break omitted). Petitions are filed with the

PTAB. 37 C.F.R. § 42.108.

The standard for opening an IPR proceeding is (based on the petition and any response)

"a reasonable likelihood that the petitioner would prevail with respect to at least [one] 1 of the

claims challenged in the petition." 35 U.S.C. § 314(a). "The determination by the Director

whether to institute an inter partes review under this section shall be final and nonappealable." 35

U.S.C. § 314(d). *See also Thryv*, 590 U.S. at 52-53 (construing scope of § 314(d)'s bar of judicial

review of institution decisions). Once opened, an IPR "is a trial subject to the procedures" set by

the PTO's regulations. 37 C.F.R. § 42.100(a).

The final decision on IPR must issue within one year of institution, but for good cause the

PTAB may extend that deadline by up to six months. 35 U.S.C. § 316(a)(11). In this case, the

PTAB instituted the IPR proceeding on December 11, 2023. It has until December 11, 2024, to

issue a decision, which may be extended up to June 11, 2025. The parties may appeal the

PTAB's decision to the Federal Circuit. 35 U.S.C. §§ 319, 141. Once a "final written decision"

issues, the petitioner "may not assert either in a civil action arising in whole or in part under

section 1338 of title 28 . . . that the claim is invalid on any ground that the petitioner raised or

reasonably could have raised during that inter partes review." 35 U.S.C. § 315(e). This statute

"generally preclude[s] a party from relitigating issues in any subsequent proceedings in federal

district court." *Return Mail*, 139 S. Ct. at 1867 n.10.

> By providing for inter partes review, Congress, concerned about overpatenting and its diminishment of competition, sought to weed out bad patent claims efficiently. *See* [*Cuozzo*,] . . . 136 S. Ct., at 2139–2140; H. R. Rep. No. 112–98, pt. 1, p. 40 (2011) ("The legislation is designed to establish a more efficient and streamlined patent system that will improve patent quality and limit unnecessary and counterproductive litigation costs.").

*Thryv*, 590 U.S. at 54.[3]

###### B.    *Motions to Stay Pending PTAB Proceedings*

The decision whether to stay a case is in the court's discretion. *Procter & Gamble v.*

*Kraft Foods Global, Inc.*, 549 F.3d 842, 849 (Fed. Cir. 2008) (citing *Landis v. N. Am. Co.*, 299

U.S. 248, 254-55 (1936)); *Wang v. Hsu*, 919 F.2d 130, 130 (10th Cir. 1990). "[T]he power to

stay proceedings is incidental to the power inherent in every court to control the disposition of

the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.

---

[3] In addition, a bill (the "PREVAIL Act") was introduced in the Senate and referred to the Committee on the Judiciary on July 10, 2023, proposing to amend the AIA. Actions - S.2220 - 118th Congress (2023-2024): PREVAIL Act | Congress.gov | Library of Congress. Among other things, the bill includes this proposed finding:

> Unintended consequences of the comprehensive 2011 reform of patent laws have become evident during the decade preceding the date of enactment of this Act, including . . . the unnecessary duplication of work by the district courts of the United States and the Patent Trial and Appeal Board, all of which drive down investment in innovation and frustrate the purpose of those patent reform laws.

Senate Bill S 2220, 118th Congress, 1st Session, 2023 Cong US S. 2220, § 2(10) (July 10, 2023). The bill appears to remain pending with the Senate Committee on the Judiciary.

How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis*, 299 U.S. at 254-55 (citing *Kan. City S. Ry. Co. v. United States*, 282 U.S. 760, 763 (1931)).

In considering whether to stay an action pending reexamination, the court generally considers:

> (1) whether a stay will simplify the issues in question and streamline the trial; (2) whether discovery is complete and whether a trial date has been set; (3) whether a stay would unduly prejudice the nonmoving party or present a clear tactical advantage for the moving party; and (4) whether a stay will reduce the burden of litigation on the parties and on the court.

*eSoft v. Blue Coat Sys., Inc.*, 505 F. Supp. 2d 784, 787 (D. Colo. 2007) (granting motion to stay pending inter partes reexamination, noting that a "PTO decision to cancel a patent renders the patent unenforceable in pending litigation"). "Courts frequently collapse the first and fourth factors. None of these factors is controlling; rather, courts determine whether a stay is appropriate based on the totality of the circumstances." *Let's Go Aero, Inc. v. U-Haul Int'l, Inc.*, No. 16-cv-00410-REB-NYW, 2016 WL 11694752, at *2 (D. Colo. Dec. 7, 2016) (internal citations and quotation marks omitted, denying renewed motion to stay pending ex parte reexamination and arbitration).

"[T]he legislative history surrounding the establishment of the reexamination proceeding evinces *congressional approval of district courts liberally granting stays*. Further, when a district court stays patent validity proceedings before it until completion of a reexamination proceeding, that stay must be accepted if the purpose of the reexamination statute is to be preserved." *eSoft*, 505 F. Supp. 2d at 786 (internal citation and quotation marks omitted, emphasis added).

In the words of a Federal Circuit judge, "the benefits of reexamination are . . .: giving the

PTO an opportunity to reconsider patents that have become the focus of litigation, relieving the courts of the need to decide some patent validity issues, and saving the courts from adjudicating infringement claims based on patents of questionable validity." *British Telecomms. PLC v. IAC/InterActiveCorp,* No. CV 18-366-WCB, 2020 WL 5517283, at *4 (D. Del. Sept. 11, 2020) (J. Bryson, sitting by designation). The legislative history for the statute authorizing reexamination reflects that Congress wished "*to prevent costly pretrial maneuvering which attempts to circumvent the reexamination procedure." Id.* (emphasis added, quoting H.R. Rep. No. 96-1307, part 1 at 4 (1980)).

> Moreover, the House Report anticipated that reexaminations would "provide a useful and necessary alternative for challengers and for patent owners to test the validity of United States patents in an efficient and relatively inexpensive manner," and that reexaminations would permit the validity of patents to be tested *in the PTO "where the most expert opinions exist and at much reduced costs."*

*Id.* (emphasis added).

The same reasoning applies to IPR proceedings. Congress's "purpose in replacing the pre-AIA *inter partes* reexamination procedure with IPR in the AIA was to 'giv[e] the Patent Office significant power to revisit and revise earlier patent grants.'" *Smith Sport Optics, Inc. v. Burton Corp.*, 601 F. Supp. 3d 936, 939 (D. Colo. 2022) (quoting *Cuozzo*, 579 U.S. at 272, and citing H.R. Rep. No. 112-98, pt. 1, at 45, 48 (2011), 157 Cong. Rec. 9778 (2011) (Rep. Goodlatte noting that IPR "screen[s] out bad patents while bolstering valid ones")).

Thus, this District applies the *eSoft* factors to motions to stay that relate to IPR proceedings. *See, e.g.*, *Smith Sport Optics*, 601 F. Supp. 3d at 940-41; *Cellect LLC v. Samsung Elecs. Co.*, No. 19-cv-00438-CMA-MEH, 2020 WL 3425166, at *2 (D. Colo. June 23, 2020) (citing *Kamstrup A/S v. Axioma Metering UAB*, No. 19-cv-1669-WJM-SKC, 2019 WL 6296699,

at *2 (D. Colo. Nov. 25, 2019)). Similarly, Judge Bryson found a "'liberal policy' in favor of staying cases . . . pending [covered business method and] other post-grant proceedings." *Id.*; *see also Fusion Specialties, Inc. v. China Network Leader, Inc.*, No. 12-cv-00009-CMA-KMT 2012 WL 3289077 (D. Colo. Aug. 11, 2012) ("Generally, 'there exists a liberal policy in favor of granting motions to stay proceedings pending the outcome of reexamination proceedings,'" quoting *Broadcast Innovation, L.L.C. v. Charter Commc'n, Inc.*, No. 03-cv-2223, 2006 WL 1897165, at *4 (D. Colo. July 11, 2006)).

In short, the same set of principles generally applies to motions to stay pending any of the several forms of post-grant proceedings—whether the former inter partes reexamination, ex parte reexamination, IPR, post-grant review, or covered business methods review—keeping in mind that differences among these procedures can be relevant to whether a stay is warranted in a given case. *British Telecomms.,* 2020 WL 5517283, at *2. Still, much as decisions in this District have done, Judge Bryson noted that "[u]ltimately the Court must decide stay requests on a case-by-case basis, and whether a stay should be granted turns in each case on the totality of the circumstances." *Id.* at *5 (internal quotation marks omitted).

III.    *Analysis*

Dish requests that this case be stayed until the IPR Proceeding and any appeal thereof are concluded. This court finds, as follows, that a stay is warranted under the *eSoft* factors.

A.    *The First and Fourth Factors: Will the IPR Proceedings Simplify Issues and Reduce the Burden of this Litigation?*

Dish argues that even if the PTAB ultimately finds only part of the Asserted Patents' claims invalid, the IPR Proceedings are likely to simplify issues and reduce the burden of this litigation. Dish argues specifically that these proceedings are likely to "simplify claim

construction and avoid inconsistent results between this Court and the PTAB," and also likely to simplify "the Court's invalidity analysis and reduce the complexity of discovery." Motion at 9. DBS opposes, arguing that (1) Dish would not be estopped from "challenging the validity of the asserted claims on grounds other than those that were raised or could have reasonably been raised in the IPRs," under 35 U.S.C. § 315, and (2) that the institution of IPR Proceedings only means that the PTAB found Dish's chances of success are 50-50. Resp. at 4-6.

The court finds Dish has the better argument on the first and fourth factors. The IPR Proceedings will likely simplify the issues in this case and reduce the burden of this litigation.[4] First, if the IPR Proceedings result in cancelling any of the Asserted Patents' claims, the scope of the claims in this case (or perhaps their construction, depending on the PTAB's reasoning) may change. As Judge Wang concluded in *Let's Go Aero*:

> At this juncture, there is no way for this court to predict whether or how the USPTO's reexamination may affect the scope of the claims; however, claim construction and trial on the merits will be unnecessary for any asserted claims that are canceled. . . . In addition, even without cancellation, depending on the representations of the patentee during a[] . . . reexamination and amendments made, damages might be limited or eliminated.

*Let's Go Aero*, 2016 WL 11694752, at *3 (collecting cases).

Moreover, the legislative history plainly indicates that Congress intended the IPR as a cost-effective alternative to litigating a patent's validity under §§ 102 and 103 in federal court:

> Patent validity is a commonly asserted defense in litigation and courts are cognizant of Congress's intention of utilizing the PTO's specialized expertise to reduce costly and timely litigation. . . . Courts recognize that shifting the patent validity issue to

---

[4] This court notes that as the referral judge in this case, this court will not hear the parties' claim construction or dispositive motions unless the district judge refers them to this court for recommendations.

the PTO has many advantages, including . . . [that] all prior art presented to the court will have been first considered by the PTO, with its particular expertise.

*eSoft*, 505 F. Supp. 2d at 786 (citing *Canady v. Erbe Elektromedizin GmbH*, 271 F. Supp. 2d 64, 78 (D.D.C. 2002) (citing H.R. Rep. No. 1307, 96th Cong., 2d Sess., pt. 7 at 4 [1980], reprinted in 1980 U.S.C.C.A.N. 6460)).

In addition, if any of the Asserted Patents' claims are cancelled, that may change the scope of Dish's pending partial motion to dismiss. The court recognizes that motion raises very different issues than the IPR Petitions, because the motion to dismiss concerns indirect infringement and willfulness issues, not obviousness or anticipation. But it would be less burdensome for this court to not spend its limited resources on the motion to dismiss while the PTAB decides if any part of the Asserted Patents fails for the reasons argued in the IPR Petitions.

This court cannot predict whether the PTAB will certainly find any of the Asserted Patents' claims invalid. But the PTAB having opened the IPR Proceedings, this court is not willing to run the risk that resources poured into this litigation in the meanwhile could prove for naught. This court declines to duplicate efforts with the PTAB, as it is more efficient to rely on the PTO's expertise in addressing the IPR Proceedings.

DBS argues that the IPR Proceedings will not resolve the entire case and will only estop Dish from raising here the issues that it brought or reasonably could have brought in the IPR Proceedings, and notes that Dish raises only four prior art references in the IPR Proceedings. Resp. at 5. DBS further notes that one of those references (Dow) "is not included in Defendant's invalidity contentions." *Id*. at n.1. But even that scope of estoppel would likely simplify this case, and even if the IPR Proceedings do not cancel any of the claims, the PTAB may provide

reasoning that would assist the court in resolving this case: i.e., "the potential simplification and reduction of burden in this case is not limited to the scope of estoppel under § 315(e)." *Downing Wellhead Equip., LLC v. Intelligent Wellhead Sys., Inc.*, No. 1:23-cv-01180-RMR-SBP, 2024 WL 625372, at *8 (D. Colo. Feb. 14, 2024).

DBS resists that conclusion, citing *Intellectual Ventures II LLC*, *v. Kemper Corp.*, No. 6:16-cv-0081, 2016 WL 7634422, 2016 U.S. Dist. LEXIS 181431, at *11 (E.D. Tex. Nov. 7, 2016), in which Judge Gilstrap held that Section 315(e)'s scope of estoppel is not enough to show a likely simplification of issues. The court respectfully notes that there can be little doubt Judge Gilstrap has for many years had one of the busiest patent dockets among federal district judges. *See, e.g.,* https://en.wikipedia.org/wiki/J._Rodney_Gilstrap#The_busiest_patent_judge_in_the_country. Judge Gilstrap may have a higher bar, if you will, than most judges for what guidance from the PTAB he would find helpful in managing a case after an IPR. *Intellectual Ventures* represents the stricter view among district courts concerning how extensive the estoppel effect must be in order to support staying the case. *See, e.g.*, *Cocona, Inc. v. VF Outdoor, LLC*, No. 16-cv-02703-CMA-MLC, 2018 WL 10910847, at *5 (D. Colo. Mar. 19, 2018) (recognizing that "[o]ther courts take a stricter view that to have the benefit of a stay pending an IPR, a non-participating defendant must agree to be bound to the same extent as the petitioner under § 315(e)") (citing *Intellectual Ventures*). On the opposite end, some courts do not require *any* potential estoppel to grant a stay pending a PTO proceeding. *Id*. (citing Robert A. Matthews, Jr., *Imposing conditions on accused infringers before granting a stay,* 4 Annotated Patent Digest § 25:126 (Mar. 2018 update)).

This court concludes, as noted above, that while the estoppel effect of Section 315(e) is

relevant for assessing the potential simplification and reduction of burden in a case, it is not the only consideration in evaluating factors one and four. "[I]n some way, any trial will be simplified by a stay of proceedings. If the PTAB grants the IPR petition, the Court will gain valuable expert insight as to the issues underlying claim validity." *Smith Sport Optics, Inc. v. Burton Corp.*, 601 F. Supp. 3d 936, 941 (D. Colo. 2022) (citing *Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed. Cir. 1983) ("One purpose of the reexamination procedure is to . . . facilitate trial of that issue by providing the district court with the expert view of the PTO[.]"). Here, the PTAB has already instituted the IPR Petitions. Again, the PTAB's reasoning will likely inform the parties' and court's work on any claims that remain after the IPR Proceedings. The court thus concludes that the IPR Proceedings are likely to simplify the issues and reduce the burden of adjudicating this case.

In short, the first and fourth factors favor a stay until the PTAB decides the IPR Proceedings and any appeal thereof is complete.

### B.    The Second Factor: How Far Along Is this Case?

The second factor simply asks whether "discovery is *complete* and whether a trial date has been set," *eSoft*, 505 F. Supp. 2d at 787 (emphasis added), to determine whether the IPR would interfere with the court's docket or otherwise work against efficiency for the parties or the court. The parties dispute whether this case should be considered in its early stages (as Dish contends) or instead advanced (as DBS contends). DBS relies on *Hunter Douglas, Inc. v. Nien Made Enter. Co.*, No. 13-cv-01412-MSK-MJW, 2014 WL 8807333, at *2 (D. Colo. Jan. 14, 2014), as denying a stay and concluding the case was "not in an early stage of proceeding" where several deadlines (to join parties and serve infringement contentions, for instance) had passed,

and the deadline to exchange proposed claim terms was near. However, the magistrate judge's order was good law for only six months, until July 21, 2014, when Chief Judge Krieger sustained an objection to the order and stayed the case pending the PTO's decision. *Id.*, Courtroom Minutes, ECF No. 156 at 2 (declining "to adopt the decision of the Magistrate Judge" and imposing a stay "until there is a determination by the Patent Office on the most recent petition"); *id.*, Amended Courtroom Minutes, ECF No. 157 at 2 ("The ruling [of the magistrate Judge] is **REVERSED** and the Motion to Stay (Doc. #74) is **GRANTED**.") (emphasis in original); *see also Hunter Douglas, Inc. v. Nien Made Enter. Co.*, No. CV 16-01308-SJO (Kx), 2016 WL 6822310, at *2 (C.D. Cal. May 23, 2016) (recognizing that "Chief Judge Marcia S. Krieger dismissed Niene [sic] Made as a defendant in the Colorado Action and stayed the Colorado Action 'until there is a determination by the Patent Office on the most recent petition,' (*see* Colo. Courtroom Minutes July 21, 2014, ECF No. 156)"); *Jefferson Str. Holdings, LLC v. Casetagram Ltd.*, No. 1:23-cv-01518-RMR-SBP, 2023 WL 8651471, at *6 (D. Colo. Nov. 28, 2023) (noting the subsequent history of *Hunter Douglas*).

Here, both sides agree: the only discovery that has been completed was *venue* discovery. Although the parties have exchanged their contentions, including for claim construction, this court has not yet set a schedule. There is no date set for a *Markman* hearing or trial. This factor weighs in favor of a stay.

C.    *The Third Factor: Undue Prejudice to Plaintiff or Strategic Benefit to Defendant?*

The third *eSoft* factor asks whether a stay "would unduly prejudice the nonmoving party or present a clear tactical advantage for the moving party." *eSoft,* 505 F. Supp. 2d at 786. Dish argues that, under precedent in this District, this factor weighs in favor of a stay because DBS

18

does not offer any products or services implementing the Asserted Patents.[5] DBS does not in fact even request injunctive relief in the Complaint.

In response, DBS complains that the IPR Proceedings and any appeal may take until "sometime in 2026." Resp. at 8. This would be four years after it filed the complaint, which would "unduly delay DBS's legitimate interest in having its long awaited day in court." *Id.* But DBS does not refute that it is a non-practicing entity. Since it does not have any potential competitive harm at stake, if DBS ultimately succeeds on its claims here, it could be fully compensated by money damages for the delay occasioned by a stay pending the IPR. *Cf. Jefferson Street*, 2023 WL 8651471, at *8 (finding the patent owner, if ultimately successful on its claims, could be compensated by damages for delay during a stay pending ex parte reexamination, where the patentee was not actively practicing the patent in competition with the accused infringing defendants).

As to the supposed strategic benefit to Dish of a stay, the court "considers the timing of . . . [the] IPR petition filings at the PTO." *Cellect*, 2020 WL 3425166, at *6. The timing of the IPR Petitions does not suggest that Dish intends the IPR Proceedings as vehicles for obtaining unfair advantage or delay. Dish timely filed the Petitions under the statute. It did not file the motion to stay until after the case transfer was completed, but it was not necessary to seek a stay before then. Judge Gilstrap had granted the transfer in June 2023, and DBS does not appear to dispute that general discovery was not underway at the time. Indeed, DBS does not appear to

---

[5] Dish also faults DBS for not doing anything for several months, when the transfer to this court was delayed. Although DBS does seem to have had access to the sealed transfer order (ECF No. 48) at the time, this court does not fault DBS for the delay in the transfer to this court. Nor does the court fault DBS for the time that has passed after the case transfer.

argue that Dish would obtain an unfair strategic advantage from a stay during the IPR

Proceeding. Nor does this court see any. As noted above, in an IPR both sides litigate the issues

before the PTAB. If any of Dish's arguments to the PTAB fail, it cannot re-raise those issues (or

any others that it could have reasonably raised in that proceeding) here. On balance, then, the

third factor weighs in favor of a stay.

Thus, all four factors weigh in favor of a stay pending the IPR Proceedings and any

appeal thereof.

D.      *Administrative Closure*

The last issue to address is whether the court should stay the case or instead

administratively close it. In some cases, administrative closure is preferable to a stay. For the

parties' purposes, the two are effectively the same. "When a court administratively closes a case,

the closure generally operates as the practical equivalent of a stay. Unlike a stay however, an

administratively closed case is not counted as active although it remains on the docket."

*Patterson v. Santini*, 631 F. App'x 531, 534 (10th Cir. 2015) (internal quotation marks and

citation omitted, citing *Quinn v. CGR,* 828 F.2d 1463, 1465 & n.2 (10th Cir. 1987)). Typically,

administrative closure "allows district courts to remove from their pending cases suits which are

temporarily active elsewhere, such as before an arbitration panel." *Patterson*, 631 F. App'x at

534 (cleaned up). "Administrative closure pursuant to D. C. COLO. LCivR 41.2 may be

appropriate when a case would otherwise be stayed for an indefinite amount of time." *Talmadge

v. Berkley Nat'l Ins. Co.*, No. 22-cv-00178-PAB-SKC, 2023 WL 5310112, at *3 (D. Colo. Aug.

17, 2023).

Here, although DBS argues that the IPR Proceedings and any appeal would be completed

"sometime in 2026," this remains an indeterminate time period. The PTAB could issue its decisions much earlier than that, and it is unknown at this point whether any party will appeal those decisions. In light of the fact that a date by which these activities will be completed cannot be precisely identified, the court accordingly finds that, in this instance, administrative closure is the more appropriate procedural course.

*IV.*    *Conclusion*

For the foregoing reasons, this court **GRANTS** the Motion to Stay (ECF No. 75), but this court also **RECOMMENDS that this case be administratively closed until the IPR Proceedings and any appeal thereof are completed.** Although recognizing that the partial motion to dismiss (ECF No. 18) is not referred, this court further **RECOMMENDS** denying that motion without prejudice to refiling after the case is reopened. The parties shall file a status report within **five business days** of either the completion of any appeals from the PTAB's decisions in the IPR Proceedings, or of the expiration of the deadline to file such an appeal.[6]

---

[6] Rule 72 of the Federal Rules of Civil Procedure provides that within fourteen (14) days after service of a Magistrate Judge's order or recommendation, any party may serve and file written objections with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. §§ 636(b)(1)(A), (B); Fed. R. Civ. P. 72(a), (b). Failure to make any such objection will result in a waiver of the right to appeal the Magistrate Judge's order or recommendation. *See Sinclair Wyo. Ref. Co. v. A & B Builders, Ltd.*, 989 F.3d 747, 782 (10th Cir. 2021) (firm waiver rule applies to non-dispositive orders); *but see Morales-Fernandez v. INS*, 418 F.3d 1116, 1119, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review, including when a "pro se litigant has not been informed of the time period for objecting and the consequences of failing to object").

DATED: May 9, 2024                    BY THE COURT:

_____
Susan Prose
United States Magistrate Judge